IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DISTRICT COURT CASE NO.:

**97-1520**
**CIV-MORENO**

WORLD AIR LEASING, INC.,
a Florida corporation,

        Plaintiff,

vs.

TRANSPORTES AEREOS EJECUTIVOS, S.A.
a foreign corporation,

        Defendant.

_____/

**MAGISTRATE JUDGE**
**DUBÉ**

NIGHT BOX
FILED

MAY - 9 1997

CARLOS JUENKE
CLERK, USDC / SDFL / MIA

## NOTICE OF REMOVAL

Defendant, TRANSPORTES AEREOS EJECUTIVOS, S.A. ("TAESA") by and through its undersigned counsel, for its Notice of Removal, states:

### State Court Action

1.    This action was commenced on or about April 11, 1997, by the filing of a Complaint in the Circuit Court for Dade County, Florida, Case No.: 97-08133. The Summons and Complaint were served on the Defendant on April 16, 1997. No further proceedings have occurred in this action, and the Summons and Complaint constitute the only process, pleadings or papers served in this action. Copies of these documents are attached collectively as Exhibit 1.

2.    In this action, Plaintiff seeks to recover damages in excess of 1.8 million dollars for an alleged breach of contract involving the lease of a General Electric CF6-50C2 aircraft engine, serial number 455376, together with engine stand serial number WAL001, its accessories, manuals and maintenance records.

### Federal Diversity Jurisdiction

3.    This Court has original jurisdiction under the provisions of 28 U.S.C § 1332 and is one which may be removed to this Court by Defendant, Transportes Aereos Ejectivos, S.A.

pursuant to the provisions of 28 U.S.C.A. § 1441, in that it is a civil action wherein the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs and is between citizens of a states and citizens of a foreign state..   Removal is effectuated pursuant to the provisions of 28 U.S.C. § 1441 and 1446.

### a. Diversity of Citizenship

4.      Plaintiff, WORLD AIR LEASING, INC., is a Florida corporation, incorporated in July, 1989, doing business in Miami, Dade County, Florida.  Because a corporation is deemed a citizen if its state if incorporation, Plaintiff is a citizen of Florida for diversity purposes.  See 28 U.S.C. § 1332(c)(1).

5.      Defendant, TRANSPORTES AEREOS EJECUTIVOS, S.A. ("TAESA") is a foreign corporation organized and existing under the laws of Mexico, as alleged in paragraph 3 of the complaint filed herein and noted in the subject contract attached as Exhibit "A" to the Complaint.  Accordingly, Defendant, TAESA is a foreign citizen for diversity purposes.

### b. Amount in Controversy

6.      Plaintiff, WORLD AIR LEASING, INC., is seeking damages in excess of $1.8 million as set forth in paragraphs 12, 18 and 22 of the Complaint filed herein, in addition to Exhibit "E" of the Complaint.  Accordingly, there can be no doubt that the amount in controversy exceeds the $75,000 jurisdictional pre-requisite.

### **RELIEF REQUESTED**

Defendant, TAESA, requests that the United States District Court for the Southern District of Florida issue such orders and process as are necessary to preserve its jurisdiction over this matter.

McCORMACK & KNOBLOCK
SUITE 1628, TWO DATRAN CENTER, 9130 SOUTH DADELAND BLVD., MIAMI, FLORIDA 33156, TELEPHONE (305) 670-9555

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing mailed and faxed to: Richard L. Richards, Esq., Jarvis & Roffino, 550 Biltmore Way, Suite 830, Coral Gables, Florida 33134, this ⁴ᵗʰ day of May, 1997.

**McCormack & Knoblock, P.A.**
Attorneys for TAESA
Two Datran Center, Suite 1628
9130 S. Dadeland Blvd.
Miami, Florida 33156
Telephone: (305) 670-9555

By: _____
Richard R. McCormack
Florida Bar No.: 168850

**Page 3**

**McCORMACK & KNOBLOCK**
**SUITE 1628, TWO DATRAN CENTER, 9130 SOUTH DADELAND BLVD., MIAMI, FLORIDA 33156, TELEPHONE (305) 670-9555**

4/11/97

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR DADE
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.: **97-08133**

WORLD AIR LEASE, INC.,
a Florida corporation,

        Plaintiff,

vs.

TRANSPORTES AEREOS EJECUTIVOS, S.A.,
a foreign corporation,

        Defendant.

ORIGINAL
FILED
APR 11 1997
HARVEY RUVIN
CLERK

## COMPLAINT

Plaintiff, WORLD AIR LEASE, INC., by and through its undersigned counsel, sues Defendant,
TRANSPORTES AEREOS EJECUTIVOS, S.A., and states:

## GENERAL ALLEGTAIONS

1.    This is an action for damages that exceed $15,000.00.

2.    Plaintiff, WORLD AIR LEASE, INC. ("WORLD"), is a corporation organized and
existing under the laws of the State of Florida with offices located at 4590 N.W. 36th Street, Miami,
Florida 33152, P.O. Box 52-3902.

3.    Defendant, TRANSPORTES AEREOS EJECUTIVOS, S.A. ("TAESA"), is a foreign
corporation organized and existing under the laws of Mexico doing business in the State of Florida with
offices located at Aviación General, Zona de Hangares "C", No.: 27, Mexico D.F. 15620.

4.    WORLD and TAESA entered into a General Term Engine Lease Agreement ("GTA"),
a copy of which is attached hereto as Exhibit "A", and a related Aircraft Engine Lease Agreement
("AELA"), a copy of which is attached hereto as Exhibit "B". By its terms, the AELA is subject to the
terms and provisions of the GTA (both of which are hereinafter collectively referred to as the "Lease

LAW OFFICES
## JARVIS & ROFFINO
Suite 830
550 Biltmore Way
Coral Gables, Florida 33134

James W. Jarvis
L. Michael Roffino
—
Richard L. Richards
—
Aylin Fraxedas Ellenburg

Telephone
(305) 448-4848
—
Facsimile
(305) 445-4545

**DATE:** 4/16/97

**TIME:**

**TO** : Rick McCoemack

**RE** :

**FAX NO.** :

**FROM** : RICHARD L. RICHARDS

**TOTAL PAGES** 34 (INCLUDING COVER SHEET)

**ADDITIONAL INSTRUCTIONS/MESSAGE:**

## NOTICE

The information contained in the documents transmitted with this facsimile message is intended only for the personal use of the designated recipients named above and may be an attorney-client communication which is privileged and strictly confidential. If you are not the intended recipient or an agent or attorney responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and we will arrange to have the original message returned. Thank you. (m:fax.rlr2)

Agreement"). The Lease Agreement provides for the lease to TAESA from WORLD of a certain General Electric CF6-50C2 Aircraft Engine, Serial Number 455376, together with engine stand Serial Number WAL001, its equipment, accessories, manuals and maintenance records ("Engine"). World is the owner of the Engine.

5.     Upon acceptance of the Engine by TAESA, TAESA executed and delivered an Engine Delivery Receipt, a copy of which is attached hereto as Exhibit "C". The Engine Delivery Receipt evidences that TAESA had inspected and accepted the Engine in an "as is, where is" condition.

6.     TAESA is in breach of the terms and conditions of the Lease Agreement.

7.     On or about December 13, 1996, during TAESA operation of the Engine on a TAESA Aircraft, the Engine suffered mechanical failure and was removed from the Aircraft by TAESA and placed in the possession of Varig Airlines at Sao Paulo, Brazil.

8.     On or about February 12, 1997, WORLD at its expense recovered and returned the Engine to an overhaul and repair facility in Miami in an incomplete, unairworthy, unserviceable, damaged and deteriorated condition.

9.     The Lease Agreement, specifically the GTA, expressly provides as follows:

a.     Sections 6 and 17 of the GTA provide that TAESA is required to maintain the Engine in good operating condition and is required to completely return it to WORLD in serviceable condition upon termination of the Lease.

b.     Section 4 of the GTA provides that the Rent remains payable until return of the Engine.

c.     Section 10 of the GTA provides that there shall be no abatement of rents or other payments by Lessee to Lessor.

d.     Section 24 of the GTA provides that the state and federal courts located in Dade County, Florida have exclusive jurisdiction for the determination of any and all issues between the parties relating to the GTA and further provides that service of process may be effectuated against TAESA via certified mail.

2

10.     Alternatively, TAESA is not properly authorized and registered to do business in the State of Florida and therefore has appointed the Secretary of State of Florida as its agent for service of process pursuant to Florida Statutes §§ 48.161 and 48.181.

11.     Alternatively, T.A.E. Sales, Inc. is a sales agent for TAESA with offices in the State of New York and therefore T.A.E. Sales, Inc. is an agent of TAESA for service of process.

12.     The cost of repairing the Engine is US$1,241,475.00 as set forth in a cost estimate form dated April 9, 1997 ("Cost Estimate Form"). The total amount due to WORLD by TAESA is $1,866,521 as set forth in a document entitled "TAESA: Amounts Outstanding to World Air Lease as of April 9, 1997" ("Outstanding Balance Sheet"). A copy of the Cost Estimate Form and the Outstanding Balance Sheet are attached hereto as Exhibits "D" and "E" respectively.

13.     Plaintiff has retained the undersigned attorneys and has agreed to pay them a reasonable fee.

## COUNT I
## BREACH OF CONTRACT

14.     Plaintiff realleges paragraphs 1 through 13 as if fully set forth herein.

15.     This is an action for damages arising from Breach of Contract.

16.     TAESA has breached the terms of the Lease Agreement by failing to pay rent and by failing to completely return the Engine to Plaintiff in a serviceable condition.

17.     This breach is the proximate cause of damages to the Plaintiff.

18.     Plaintiff has suffered damages in the amount of $1,866,521.00 plus the value of the property retained by TAESA.

19      Plaintiff has fully performed and satisfied any and all conditions precedent or same have been waived, before the filing of this action.

3

WHEREFORE, Plaintiff, WORLD, demands judgment for damages against TAESA including interest, attorney's fees pursuant to Florida Statutes §57.105, and costs.

## COUNT II
### DEBT

20. Plaintiff realleges paragraphs 1 through 13 as if fully set forth herein.

21. This is an action for damages arising from debt.

22. TAESA owes WORLD $1,866,521.00.

WHEREFORE, Plaintiff, WORLD, demands judgment for damages against TAESA including interest, attorney's fees pursuant to Florida Statutes §57.105 and costs.

## COUNT III
### REPLEVIN

23. Plaintiff realleges paragraphs 1 through 13 as if fully set forth herein.

24. This is an action for Replevin of property with a value in excess of $15,000.00.

25. The property is the Engine's equipment, accessories, manuals, maintenance records and engine stand Serial Number WAL001 ("Property"). The Property is valued at $2,300,000.00 which is the agreed value of the Engine according to the Certificate of Insurance. A copy of the Certificate of Insurance is attached hereto as Exhibit "F". The Engine is incomplete and worthless without the Property, especially the manuals and maintenance records thereto. The Property is located at Aviacion General, Zona De Hangares "C", No. 27, Mexico, D.F. 15620.

26. Plaintiff is the owner of the Property and is entitled to possession thereof.

27. The Property is wrongfully detained by TAESA. TAESA came into possession of the Property under the Lease Agreement. To Plaintiff's best knowledge, information, and belief, TAESA detains the Property for its own economic benefit.

28. The Property has not been taken for any tax, assessment or fine pursuant to law.

4

29.     The Property has not been taken under an execution or attachment against the property of

WORLD.

WHEREFORE Plaintiff demands judgment against TAESA for possession of the Property,

including interest, attorney's fees pursuant to Florida Statutes §57.105, and any such further relief as is

just and proper.

> JARVIS & ROFFINO
> Attorneys for Plaintiff
> 550 Biltmore Way, Suite 830
> Coral Gables, Florida 33134
> Tel: (305) 448-4848
> Fax: (305) 445-4545
>
> By
>
> Richard L. Richards
> Fla. Bar No.: 9415

P:World-Taesa. CO

# GENERAL TERMS ENGINE LEASE AGREEMENT

## BETWEEN

## WORLD AIR LEASE, INC.
### (LESSOR)

## AND

## TAESA
### (LESSEE)

## FOR

## CF6-50 ENGINES

REFERENCE: 2110/376R1-TAESA

H:\LEASE\TAESA.WAL:gk
October 22, 1996

EXHIBIT "A"

# TABLE OF CONTENTS

| Section | Title | Page |
|---|---|---|
| 1 | Term of this GTA | 1 |
| 2 | Individual Engine Leases; Term | 1 |
| 3 | Delivery, Inspection, Acceptance and Installation | 1 |
| 4 | Charges and Payment | 2 |
| 5 | Compliance with Laws | 4 |
| 6 | Use and Maintenance | 4 |
| 7 | Records | 4 |
| 8 | Modifications | 5 |
| 9 | Total Loss | 5 |
| 10 | Abatement or Set Off | 5 |
| 11 | Release and Indemnity | 6 |
| 12 | Warranty; Disclaimer | 6 |
| 13 | Force Majeure | 7 |
| 14 | Insurance | 7 |
| 15 | Title to Equipment | 8 |
| 16 | Taxes | 9 |
| 17 | Return of Equipment | 9 |
| 18 | Termination and Additional Assurances | 10 |
| 19 | Repossession of Equipment | 11 |
| 20 | Notices | 11 |
| 21 | Recording | 11 |
| 22 | Brokers/Finders | 12 |
| 23 | Miscellaneous | 12 |
| 24 | Governing Law | 13 |
|  | Signatures | 13 |
|  |  |  |
| Exhibit A | Aircraft Engine Lease Agreement | A-1 |
| Exhibit B | Engine Delivery Receipt | B-1 |

GENERAL TERMS
ENGINE LEASE AGREEMENT

This General Terms Engine Lease Agreement ("GTA") is made and entered into as of this 22nd day of October, 1996 by and between World Air Lease, Inc., of P.O. Box 52-3902, Miami, Florida 33152 U.S.A. (hereinafter "Lessor") and Transportes Aereos Ejectivos, S.A. (TAESA) with offices at Aviacion General, Zona De Hangares "C", No. 27, Mexico, D.F. 15620 (hereinafter "Lessee").

In consideration of the premises and mutual promises herein contained, Lessor and Lessee hereby agree as follows:

1.    TERM OF THIS GTA

The term of this GTA will commence on the date stated above and will continue thereafter for one (1) year unless extended in a writing signed by the Parties or terminated hereunder.

2.    INDIVIDUAL ENGINE LEASES; TERM

a.    Lessor will lease CF6-50C2 aircraft engines to Lessee from time to time to the extent such engines are desired by Lessee and are available from Lessor, all upon the terms and conditions hereof.  Such individual engine leases will be initiated by Lessee submitting to Lessor an executed Aircraft Engine Lease Agreement ("Lease") in the form of Exhibit A.  Each Lease shall be for a single engine described by serial number in the Lease and all parts and attachments thereto (the "Engine"), all Engine records in the possession of Lessor which are requested by Lessee, Engine records generated by Lessee during the Lease Term, and one Engine stand described by serial number in the Lease (collectively referred to as the "Equipment").

b.    The term of each Lease shall be for the period specified in such Lease ("Lease Term"). Lessee will forthwith redeliver the Equipment to Lessor upon the expiration or earlier termination of the Lease pertaining to such Equipment.

3.    DELIVERY, INSPECTION, ACCEPTANCE AND INSTALLATION

a.    Lessor will deliver the Equipment to Lessee at the FOB point specified in the applicable Lease (the "Delivery").  At time of the Delivery, the Engine will have a Federal Aviation Administration ("FAA") approved return to service maintenance release tag affixed to it.

b.    Lessee will deliver to Lessor a receipt for the Engine substantially in the form of Exhibit B hereto, duly executed by an authorized representative of Lessee upon the Delivery of such Engine.

c.    Delivery by Lessor is subject to the following conditions precedent:

E:\LEASE\TATSA.WAL:th
October 22, 1996

i.   Receipt by Lessor of the Initial Payment required by Section 4.b. below; and

ii.   Receipt by Lessor of the insurance certificates required by Section 14.h. below.

d.   Lessee may conduct a visual (including borescope) inspection of the Engine within the Inspection Period stated in the Lease to determine whether the Engine is acceptable to Lessee. If Lessee installs or operates the Engine or does not notify Lessor before the end of such period that the Engine is not acceptable to Lessee, it will be conclusively deemed that Lessee has accepted the Engine. Any Engine rejection shall be by notice to Lessor detailing the reason for rejection. In the event of such rejection, Lessee will hold the Equipment pending shipping instructions from Lessor, at which time Lessee will ship the Equipment to Lessor's designated location at Lessor's sole expense. Upon receipt of the Equipment by Lessor, the Lease with respect to such Equipment will terminate, all funds previously received by Lessor from Lessee pursuant to such Lease will be returned to Lessee, and neither party will have any further liability to the other under such Lease.

e.   Within forty eight (48) hours after installation of an Engine on an aircraft, Lessee shall notify Lessor of the type and serial number of such aircraft.

f.   Lessee represents and warrants to Lessor that each lessor, lender, or any other party having an interest in any aircraft upon which an Engine is or may be installed under any Lease has authorized such installation and has acknowledged to Lessee that such lessor, lender, or other party will acquire no right, title, or interest in and to such Engine by reason of such installation.

4.   <u>CHARGES AND PAYMENT</u>

a.   In accordance with the terms of this GTA and as specified in each Lease, Lessee shall pay Lessor each of the following:

i.   <u>Rent</u>. The Rent shall be payable monthly in advance for each day or fraction thereof for the Lease term, commencing with the Delivery Date of the Equipment and payable thereafter each month on the same day as the commencement date, until the return of the Equipment.

ii.   <u>Minimum Use Fee</u>. The Minimum Use Fee be payable monthly in arrears for each month or fraction thereof for the Lease term, commencing one month following the date of the Delivery of the Equipment and payable thereafter each month on the same day as the commencement date, until the return of the Equipment.

iii.   <u>Installed Use Fee</u>. No later than the 5th day of each calendar month, Lessee shall advise Lessor of the total hours and cycles of the Engine's utilization during the previous month, and no later than the 10th day of each calendar month, Lessee shall pay Lessor the Installed Use Fee. The Installed Use Fee shall be

2

d.  Within ten (10) days after a request by either party, but not more frequently than once every thirty (30) days during any Lease, and within thirty (30) days after redelivery of the Equipment to Lessor, the parties will reconcile all charges under such Lease. Lessee will then promptly pay Lessor any payment deficiency and, provided Lessee is not in default hereunder, Lessor will then pay Lessee any payment excess.

5.  COMPLIANCE WITH LAWS

Lessee will comply in all respects with all laws, ordinances, rules, regulations, and orders of all governmental authorities, applicable to the installation, operation, and maintenance of all Equipment.

6.  USE AND MAINTENANCE

a.  Lessee will use each Engine only on commercial transport aircraft owned or operated by Lessee in a safe manner, and in accordance with the manufacturer's recommended operating procedures and manuals and instructions in effect from time to time and only in those countries for which the insurance required under Section 14 herein is effective.

b.  During a Lease Term, Lessee will repair and maintain the Engine in accordance with applicable requirements of all governmental agencies, the requirements and recommendations of the manufacturers of the Engine, and any special instructions of the Lessor, provided that any such special instructions will not cause Lessee to bear any additional expense for any Engine leased hereunder. Lessee shall keep the Engine in as good operating condition as when delivered to Lessee, reasonable wear and tear from ordinary use excepted (which does not exceed the manufacturer's published limits). Each Engine must be returned to Lessor in serviceable condition at the end of its Lease Term as set forth in Paragraph 17 herein. Maintenance by the Lessee will include all unscheduled maintenance, line maintenance, and replacement of components and parts as may be required (except that Lessee will not be responsible for replacing life-limited parts which are due for replacement solely as the result of life expiration). In addition, Lessee will replace or repair any loss or damage to the Equipment, regardless of cause. Lessee will advise Lessor and obtain Lessor's approval before commencing unscheduled maintenance which must be performed "off-wing". All unscheduled maintenance and replacement of components and parts as may be required, except line maintenance items, shall be performed by Lessor.

c.  All replacement parts will be free and clear of liens and be of equal or better value and modification status than the part replaced, assuming the part replaced was in the condition required by this GTA. All such replacement parts must have been last serviced by a FAA-approved repair facility, and such parts will become the property of Lessor immediately upon installation on an Engine. All replaced parts will become the property of Lessee immediately upon replacement.

11. RELEASE AND INDEMNITY

    a.    LESSEE HEREBY RELEASES AND AGREES TO INDEMNIFY, DEFEND, AND HOLD LESSOR, ITS DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS HARMLESS FROM AND AGAINST ANY AND ALL LIABILITIES, CLAIMS, DEMANDS, SUITS, DAMAGES, AND LOSSES (INCLUDING WITHOUT LIMITATION ALL REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES IN CONNECTION THEREWITH OR INCIDENT THERETO), FOR DEATHS OF OR INJURIES TO ANY PERSONS WHOMSOEVER (INCLUDING WITHOUT LIMITATION LESSEE'S EMPLOYEES), AND FOR LOSS OF OR DAMAGE TO OR DELAY IN THE DELIVERY OF ANY PROPERTY WHATSOEVER (INCLUDING WITHOUT LIMITATION ANY AIRCRAFT ON WHICH ANY ENGINE MAY BE INSTALLED AND LOSS OF USE THEREOF), IN ANY MANNER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE DELIVERY, LEASING, STORAGE, TRANSPORTING, INSTALLATION, OPERATION, MAINTENANCE, OR USE OF ANY ENGINE WHILE UNDER LEASE, OR THE DETACHMENT OR REDELIVERY OF ANY SUCH ENGINE HEREUNDER REGARDLESS OF NEGLIGENCE, ACTIVE, PASSIVE, OR ANY OTHER TYPE, OF LESSOR, ITS DIRECTORS, OFFICERS, EMPLOYEES, OR AGENTS; PROVIDED THE FOREGOING INDEMNIFICATION WILL NOT APPLY TO ANY CLAIM OR LIABILITY RESULTING FROM THE WILLFUL OR WANTON MISCONDUCT OF LESSOR, ITS DIRECTORS, OFFICERS, EMPLOYEES, OR AGENTS.

    b.    IN NO EVENT WILL LESSOR BE LIABLE FOR ANY REASON FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST REVENUES, LOST PROFITS, OR LOSS OF PROSPECTIVE ECONOMIC ADVANTAGE, RESULTING FROM PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT.

12. WARRANTY; DISCLAIMER

    a.    Lessor warrants that it will either have good title to the Equipment at the time of delivery to Lessee or that Lessor has the endorsement of the Equipment's Owner and the right to lease the Equipment to Lessee.

    b.    The Equipment is leased and accepted by Lessee in "AS IS" condition and with all faults. Lessor makes no warranties whatsoever with respect to any Equipment, express or implied, except the warranty as to title or right to lease appearing in Section 12.a. above.

    c.    THE WARRANTIES SET FORTH IN THIS SECTION 12 AND THE OBLIGATIONS AND LIABILITIES OF LESSOR THEREUNDER, ARE EXPRESSLY IN LIEU OF AND LESSEE HEREBY WAIVES AND RELEASES LESSOR FROM ANY AND ALL OTHER WARRANTIES, AGREEMENTS, GUARANTEES, CONDITIONS, DUTIES, OBLIGATIONS, REMEDIES OR LIABILITIES, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY AND FITNESS FOR INTENDED USE,

WITH RESPECT TO ANY EQUIPMENT LEASED HEREUNDER OR LESSOR'S PERFORMANCE HEREUNDER. NO AGREEMENT OR UNDERSTANDING VARYING, ALTERING, OR EXTENDING LESSOR'S LIABILITY WILL BE BINDING ON LESSOR UNLESS IN WRITING AND SIGNED BY LESSEE'S AND LESSOR'S DULY AUTHORIZED OFFICERS OR REPRESENTATIVES.

d.    Upon Lessee's request and provided that Lessee is not in default under this GTA or any Leases hereunder, Lessor will reasonably assist Lessee in processing claims and enforcing rights of Lessor arising under any existing manufacturer's or overhaul agency warranties for any Engine leased hereunder; provided always that Lessee will indemnify Lessor for any reasonable costs and expenses incurred by Lessor in connection therewith, excluding costs of Lessor's personnel. With respect to any such warranties, it is understood further that, except as specifically provided in this Section 12.d., Lessor will have no further liabilities to Lessee.

13.   FORCE MAJEURE

Lessor will not be liable for failure to perform or any delays in performance hereunder due to acts of God, the public enemy, war or warlike operations, failure of suppliers to timely deliver or other inability to secure parts or material, insurrection or riots, floods, explosions, fires, hurricanes, tornados, earthquakes, any governmental act, failure of transportation, strikes or other labor disputes, acts or omissions of Lessee or any other cause beyond Lessor's control.

14.   INSURANCE

a.    Lessee will procure and maintain in full force and effect during the term of each Lease, policies of insurance of the type and in the minimum amounts stated below and with companies acceptable to Lessor and under terms reasonably satisfactory to Lessor:

i.     Comprehensive Airline Liability Insurance with an aggregate limit of not less than the Liability Limit stated in the Lease, naming Lessor, its directors, officers, agents, and employees as additional insureds. Such policy will expressly cover the obligations assumed by Lessee in Section 11 above.

ii.    Aircraft hull insurance covering all risks, ground and flight, to the Engine in a minimum amount not less than the Agreed Value stated in the Lease for such Engine. Such policy will include Lessor as loss payee as its interests may appear.

iii.   All risk spares insurance, including in transit coverage, on the Equipment covering any damage which may occur while in Lessee's care, custody, and control but not then attached to an aircraft in a minimum amount not less than the Agreed Value stated in the Lease for such Equipment. Such policy will include Lessor as loss payee as its interest may appear.

b. All insurance coverage listed in Section 14.a. above will include war risk, hijack, and confiscation coverage in the amounts listed therein.

c. All policies will provide that all insurance carriers, including the hull insurance carrier for the aircraft on which any Engine may be installed, waive any and all rights of subrogation that such carriers may or could have against Lessor, its directors, officers, agents, and employees by virtue of such insurance contracts.

d. Any permitted deductibles in the insurance coverage described in this Section 14 are the sole responsibility of Lessee and will be paid to Lessor by Lessee in the event of a loss or claim as Lessor's interests may appear.

e. All of the policies of insurance required of Lessee will include breach of warranty protection in favor of Lessor.

f. All policies required of Lessee will provide that such insurance will be primary insurance and that any other insurance of Lessor is secondary or excess insurance.

g. All policies will provide that Lessor will be given thirty (30) days prior written notice by the insurers of policy cancellation or material change thereof except for coverage in Section 14.b. which will require seven (7) days prior written notice.

h. Lessee will provide Lessor with certificates of insurance satisfactory to Lessor evidencing the above coverage in accordance with Section 3.c.

i. When Lessor is not the Owner of the Equipment leased to Lessee, then Lessee agrees that the Owner (identified at paragraph VI. of the Lease) shall be named and provided for with Lessor as follows: (1) named as an additional insured at 14.a.1. above; (2) named as an additional loss payee at 14.a. ii. and iii. above; (3) shall receive waiver of subrogation rights from insurance carriers as provided for in 14.c. above; (4) receive breach of warranty protection as provided for in 14.e. above; and (5) will have its insurance determined secondary as provided for in 14.f. above.

j. All losses will be adjusted with Lessor and Lessee.

15. TITLE TO EQUIPMENT

Title to Equipment will remain vested at all times in Lessor, or the Owner if Lessor is not the Owner. Lessee will not permit any lien, claim, mortgage, or encumbrance except those liens arising by or through Lessor or Owner ("Liens") to attach to any Equipment. Lessee will indemnify Lessor or Owner for any damages suffered by Lessor or Owner, including costs and expenses incident thereto, occurring as a result of any such Liens. Lessee's rights will be solely those of a lessee and nothing contained herein is intended or will be interpreted as granting to Lessee any other right, title, or interest in or to any Equipment, whether legal or equitable. Lessor will affix a placard to each Engine and Lessee will assure the placard remains attached to the Engine during the Lease Term, such placard to read as follows:

"THIS ENGINE IS OWNED BY WORLD AIR LEASE, INC., P.O. BOX 52-P.O., MIAMI, FLORIDA 33152 U.S.A", OR IN THE EVENT LESSOR IS NOT THE OWNER, THEN A PLACARD STATING THE SAME, BUT WITH THE OWNER'S NAME AND ADDRESS AS IT IS IDENTIFIED AT PARAGRAPH VI. OF THE LEASE.

16.    TAXES

The charges set forth herein and in each Lease, including the Rent, Minimum Use Fee, Installed Use Fee and Security Deposit, do not include the amount of any duties, charges, imposts, or sale, use, excise, transfer, gross receipts, or any other taxes or charges which may be imposed by any governmental jurisdiction in connection with the lease of any Equipment, which shall be paid by Lessee. Lessee will indemnify, defend, and hold Lessor harmless from and against any and all taxes of whatsoever kind or nature, including costs or expenses incurred in connection therewith, except taxes based on the net income of Lessor, which may be assessed against, chargeable to, or collectible from either Lessee or Lessor by any taxing authority, foreign, federal, state, or local, and which are based upon, levied, or assessed with respect to the lease of any Equipment or the operation, possession, or use of such Equipment while under any Lease. Upon demand of any governmental authority for payment of any such tax or charge, Lessor will immediately notify Lessee and Lessee will pay the same; provided, however, that in the event that Lessor is required to pay the same, Lessor will invoice Lessee for the amount of such tax or charge paid by it and Lessee will immediately reimburse Lessor for such amount.

17.    RETURN OF EQUIPMENT

a.    Upon the termination of this Agreement, Lessee shall deliver the Engine leased hereunder to Lessor at Greenwich Air Services, Inc.'s facility located at 4590 N.W. 36 Street in Miami, Florida, U.S.A. The Engine shall be delivered in the same condition as when delivered to Lessee, less reasonable wear and tear. The term "reasonable wear and tear" shall mean a utilization condition free of damage, whereby the Engine, its components or parts does not exceed the manufacturer's published limits of its intended approved utilization, has no adverse effect upon the Engine, its components or parts reliability or involve any premature additional scheduled maintenance actions not common to such engine. In addition to the return of the Engine as required herein, all Engine records shall be brought up to date and shall reflect the current time remaining on the Engine, Lessee shall deliver an official flight engineer's report inclusive of all Engine performance data. This requirement is in addition to the records and requirements set forth at Paragraph 7 herein.

b.    Prior to returning the Equipment to Lessor, Lessee will prepare each Engine for shipment by (i) capping and plugging all openings of the Engine; (ii) preserving the Engine for ninety (90) days or more storage; (iii) completely covering the Engine with a tarpaulin; and (iv) otherwise preparing the Engine for shipment in accordance with the manufacturer's specifications/recommendations. Any trucks used for shipment of the Engine will be equipped with air ride or air cushion trailers. On any given shipment, such truck will be dedicated to Engines belonging solely to Lessor; except that additional items may be transported on the truck, provided that (a) the Engine may be off-loaded

at the redelivery location without disturbing any of the additional items and (b) Lessor will not handle or reposition any of the additional items on the truck.

c.   Prior to redelivery of the Engine, Lessee shall cause a test cell run to be performed and the Engine to be borescoped by Greenwich Air Service, Inc. at its repair facility, all at Lessee's expense. In the event such test indicates damage or deterioration in the Engine condition in excess of fair wear and tear or less than ten degrees centigrade EGT margin per the manufacturer's specification, Lessee shall cause repairs to be made to the Engine in order to return it to the condition received from Lessor, all at Lessee's expense, with the exception that no time in excess of those remaining times operating upon receipt of the Engine by Lessee need to placed on the Engine. Such maintenance shall confirm compliance with all FAA airworthiness directives and be accompanied by an FAA 337 or FAA 8130-3 maintenance release. If during the Lease Term for any Engine, such Engine has not been installed on an aircraft, has not suffered any damage, and has not been involved in an accident, then performance of a borescope inspection may be waived with Lessor's prior written consent.

d.   Together with the Engine, upon expiration or termination of the Lease, Lessee shall deliver to Lessor a certification from Lessee's duly qualified assurance/control inspector of the hours and cycles utilized on the Engine from commencement of the term of Lease to the return of the Engine.

18.   TERMINATION AND ADDITIONAL ASSURANCES

a.   If Lessee fails to perform its obligations under any Lease hereunder and such failure to perform continues for a period of five (5) days after written notice to Lessee by Lessor (except in the case of nonpayment of monies due wherein no notice of such default will be required), Lessor may repossess the Equipment with or without terminating the Lease, or terminate this GTA and all Leases immediately upon written notice and take such other action as may be permitted by this GTA or applicable law. The right of each party to require strict performance of any obligations hereunder will not be affected in any way by any previous waiver, forbearance, or course of dealing.

b.   If Lessee becomes insolvent; if Lessor has evidence that Lessee is not paying its bills when due without just cause; if a receiver of Lessee's assets is appointed; if Lessee takes any step leading to its cessation as a going concern; if Lessee either ceases or suspends operations for reasons other than a strike; if Lessee voluntarily or involuntarily goes into bankruptcy; then Lessee will forthwith give adequate assurance of the future performance of this GTA and all Leases by establishing an irrevocable letter of credit issued by a bank and on terms and conditions acceptable to Lessor, and in an amount sufficient to cover all amounts potentially due from Lessee under this GTA and all Leases. Such letter of credit may be drawn upon by Lessor if Lessee does not fulfill its obligations under this GTA and all Leases in a timely manner. If Lessee does not provide the letter of credit or such other security reasonably acceptable to Lessor within twenty-four (24) hours of the happening of any such event, this GTA and all Leases hereunder will be terminated as of the happening of such event.

19.   REPOSSESSION OF EQUIPMENT

    a.     In the event of any failure of Lessee to redeliver any leased Equipment to Lessor at the time required under Section 2 hereof, or in exercise of its right to repossess the Equipment under Section 18.a. above, Lessor may, without notice to Lessee, in addition to the exercise of any remedies available under law, enter upon the premises where such Equipment is located and take immediate possession of and remove such Equipment, without liability to Lessee for or by reason of such entry or taking possession, whether for the restoration of damage to property caused by such taking or otherwise, and Lessee consents to such action.

    b.     To the extent permitted by law, Lessee hereby agrees, in accordance with Section 1110 of Title 11 of the United States Code or any superseding statutes, as amended from time to time, that any right of Lessor to take possession of the Equipment in compliance with the provisions of this GTA will not be affected by the provisions of Section 362 or 363 of such Title 11 or other analogous part of any superseding statutes, as amended from time to time. Lessee further agrees that neither it nor any successor will take a contrary position in any bankruptcy proceedings, nor will it take any action to interfere with Lessor's rights hereunder.

20.   NOTICES

All notices or requests given in connection with this GTA or any Lease will be given in writing and sent prepaid by certified mail return receipt requested, telegram, cable, or facsimile transmission to the addresses listed below unless either party notifies the other party of a different address.

    For Lessor:    World Air Lease, Inc.
                       P.O. Box 52-3902
                       Miami, Florida 33152 U.S.A.
                       Attn: Dan Steele, Vice President
                       Fax: (305) 871-9616
                       Telephone: (305) 870-8000

    For Lessee:    Transportes Aereos Ejectivos, S.A. (TAESA)
                       Aviacion General
                       Zona De Hangares "C"
                       No. 27, Mexico, D.F. 15620.
                       Attn: Percival Brown, Povisioning Manager
                       Fax: (525) 238-3762
                       Telephone: (525) 227-0770

21.   RECORDING

Lessor intends to record all Leases with the Department of Transportation, Federal Aviation Administration, FAA Engine Registry, Oklahoma City, Oklahoma. Upon the termination of this

GTA or any Lease for any reason whatsoever, each of the parties will execute and deliver to the other party promptly such documents as the other party may reasonably request in order to file a termination of this GTA or any Lease with the FAA.

22. BROKERS/FINDERS

Lessor and Lessee each represent to the other that it has not involved third parties as brokers or finders with respect to this GTA or any Leases entered into for any Equipment, and each party indemnifies the other from liability for fees, commissions, or other intermediary's claims arising as a result of actions of the indemnifying party.

23. MISCELLANEOUS

a. This GTA and each Lease entered into hereunder contain the entire understanding of the parties with respect to such Lease and no warranties, representations or undertakings have been made by either party except as expressly set forth in this GTA and the respective Lease(s) entered into hereunder.

b. This GTA has been negotiated between the parties, each party having had the benefit of legal counsel. The construction or interpretation of any clause or provision of this GTA or any Lease will not be construed or resolved against Lessor solely because Lessor drafted any such clause or provision or otherwise prepared or caused the GTA or Lease documents to be drafted.

c. This GTA and any Lease may not be amended, changed, waived, or terminated in whole or in part orally, but only by an express instrument in writing signed by the party against which the enforcement of the change, waiver, or termination is sought.

d. This GTA will be binding upon and inure to the benefit of the respective permitted successors and assigns of the parties.

e. This GTA and any Lease hereunder may be executed in counterparts. Such counterpart documents, when taken together, will constitute one and the same instrument. A facsimile signature on any counterpart will be deemed an original for all purposes.

f. The terms contained in this GTA and any Lease that, by their nature, continue after termination or expiration thereof or redelivery of the Equipment to Lessor will survive such termination, expiration, or redelivery and continue in full force and effect.

g. If any portion of this Agreement shall be determined to be in violation of or contrary to any law, rule or regulation by a court of competent jurisdiction, then that portion shall be unenforceable and deleted from the Agreement. However, the balance of this Agreement shall remain in full force and effect notwithstanding the unenforceability of said portion.

h.     The remedies afforded a non-breaching party are cumulative and in addition to all other rights in law, equity or otherwise.

24.    APPLICABLE LAW

This GTA and all Leases shall be deemed to have been made in Dade County, Florida, and shall be interpreted, and the rights and liabilities of the parties hereto determined in accordance with the law of the State of Florida, U.S.A. without regard to conflicts of law principles. The parties consent and hereby submit to the exclusive jurisdiction of the state and federal courts located in Dade County, Florida, U.S.A. for the determination of any and all issues between the parties relating to this Agreement. Nothing in this clause limits the right of Lessor to bring proceedings in any other court of competent jurisdiction; nor shall the bringing or continuing of proceedings in one or more jurisdictions preclude the bringing or continuing of proceedings in any other jurisdiction, whether concurrently or otherwise. Lessee irrevocably waives any objection which it may have at any time to the laying of the venue of any proceedings in any court referred to in this section, to any claim that any such proceedings have been brought in any inconvenient forum, to any right to trial by jury in any proceedings, and to any objection to service of process if such service is by certified mail, return receipt requested, at the address provided, or updated as provided, herein. Lessee agrees to be subject to the Florida Long Arm Statute for service of process. Lessee irrevocably waives the application of the U.S. Foreign Sovereign Immunities Act, 28 U.S.C. 1602 et seq.

IN WITNESS WHEREOF, the parties have executed this General Terms Engine Lease Agreement the day and year first above written.

WORLD AIR LEASE, INC.                    TRANSPORTES AEREOS EJECTIVOS, S.A.

By: _____           By: _____

Name: _____           Name: _Percival Brown_____

Title: _Vice President_____            Title: _Provisioning Mgr.____

Date: _Oct 22, 1996_____             Date: _OCT 23, 1996_____

EXHIBIT "A"
## AIRCRAFT ENGINE LEASE AGREEMENT

THIS AIRCRAFT ENGINE LEASE AGREEMENT ("Lease") is made and entered into as of _ooo̱ ᴢ ᴣ_ ,1996, by and between World Air Lease, Inc. of P.O. Box 52-3902, Miami, Florida 33152 U.S.A. (hereinafter "Lessor") and Transportes Aereos Ejectivos, S.A. (TAESA) with offices at Aviacion Geneal, Zona De Hangares "C", No. 27, Mexico, D.F. 15620 (hereinafter "Lessee").

## WITNESSETH

I.  AGREEMENT TO LEASE:  Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the Equipment described in ARTICLE V herein, subject to the terms and provisions of this Lease document and the General Terms Engine Lease Agreement dated October 22, 1996, (the "GTA") between Lessor and Lessee which is hereby incorporated herein by reference.

II.  LEASE TERM: The term of this Lease will be for a period of _____ ( ) days, commencing _ooo̱ ᴢᴣ_, 199_6_ (the "Delivery Date").

III.  INSPECTION PERIOD:  Forty-eight (48) hours after the Delivery Date.

IV.  DELIVERY/REDELIVERY: _____

V.  TYPE OF EQUIPMENT:

| Make | Model | Engine QEC Configuration | Serial No. | Tag |
|------|-------|--------------------------|------------|-----|
|      |       |                          |            |     |

Engine Stand Serial Number: _____

VI.  OWNER OF ENGINE: _____

VII.  CHARGES AND PAYMENTS:

| (Daily) Rent | (Monthly) Minimum Use Fee | Installed Use Fee | Security Dep. | Initial Payment * |
|--------------|---------------------------|-------------------|---------------|-------------------|
|              |                           |                   |               |                   |

* Note:  Initial Payment consists of :

(a)  _____
(b)  _____

for a total Initial Payment due in the amount of $_____

VIII.   AGREED VALUE: $ _____

IX.     COMPREHENSIVE GENERAL LIABILITY INSURANCE: $ _____

X.      AIRCRAFT LIABILITY INSURANCE: $ _____

XI:     ESTIMATED DAILY FLIGHT HOURS: _____

IN WITNESS WHEREOF, the parties have executed this Lease on the date first above written.

WORLD AIR LEASE, INC.                    TRANSPORTES AEREOS EJECTIVOS, S.A.

By: _____              By: _____

Name: _____              Name: _____

Title: _____              Title: _____

## EXHIBIT "B"

### ENGINE DELIVERY RECEIPT

TO:        WORLD AIR LEASE, INC. (Lessor)

FROM:   TRANSPORTES AEREOS EJECTIVOS, S.A. (Lessee)

The undersigned hereby acknowledges that on this __th day of _____, 19__, Lessor did deliver, in accordance with that certain Aircraft Engine Lease Agreement dated _____, 1996, to Lessee that certain _____ Engine, Manufacturer's Serial No. _____ at Miami, Florida. The undersigned does hereby further acknowledge that he/she has received and does hereby accepts delivery of the aforesaid Engine.

Signed this ____th day of _____, 199__, at Miami, Florida.

TRANSPORTES AEREOS EJECTIVOS, S.A.

By:_____
            (Signature)

Name:_____
            (Printed or Typed)

Title:_____

## AIRCRAFT ENGINE LEASE AGREEMENT

THIS AIRCRAFT ENGINE LEASE AGREEMENT ("Lease") is made and entered into as of October 23, 1996, by and between World Air Lease, Inc. of P.O. Box 52-3902, Miami, Florida 33152 U.S.A. (hereinafter "Lessor") and Transportes Aereos Ejectivos, S.A. (TAESA) with offices at Aviacion Geneal, Zona De Hangares "C", No. 27, Mexico, D.F. 15620 (hereinafter "Lessee").

### WITNESSETH

I.  AGREEMENT TO LEASE: Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the Equipment described in ARTICLE V herein, subject to the terms and provisions of this Lease document and the General Terms Engine Lease Agreement dated October 22, 1996, (the "GTA") between Lessor and Lessee which is hereby incorporated herein by reference.

II.  LEASE TERM: The term of this Lease will be for a period of ninety (90) days, commencing October 23, 1996 (the "Delivery Date").

III.  INSPECTION PERIOD: Forty-eight (48) hours after the Delivery Date.

IV.  DELIVERY/REDELIVERY: Miami, Florida

V.  TYPE OF EQUIPMENT:

| Make | Model | Engine Configuration | Serial No. | Tag |
|------|-------|---------------------|-----------|-----|
| General Electric | CF6-50C2 | Bare | 455376 | Varig |

Engine Stand Serial Number: WAL001

VI.  OWNER OF ENGINE: World Air Lease Inc.

VII.  CHARGES AND PAYMENTS:

| (Daily) Rent | (Monthly) Minimum Use Fee* | Installed Use Fee | Security Dep. | Initial Payment ** |
|------|------|------|------|------|
| $2,000.00 | $39,600.00 | $240.00/hour or cycle (whichever is greater) with a minimum 6:1 hour to cycle ratio | $120,000.00 | $180,000.00 |

*Minimum Use Fee consists of:  165 hours x $240.00 per EFH

**Initial Payment consists of:
|     | (a) | Rent: | $ 60,000.00 |
|-----|-----|-------|-------------|
|     | (b) | Security Deposit: | $120,000.00 |
| for a total Initial Payment due in the amount of: | | | $180,000.00. |

VIII.   AGREED VALUE: $2,300,000.00

IX.   COMPREHENSIVE GENERAL LIABILITY INSURANCE: $600,000,000.00

X.   AIRCRAFT LIABILITY INSURANCE: $600,000,000.00

XI.   ESTIMATED DAILY FLIGHT HOURS: 14 hours

IN WITNESS WHEREOF, the parties have executed this Lease on the date first above written.

WORLD AIR LEASE, INC.

By: _____

Name: _____ STEELE

Title: Vice President

TRANSPORTES AEREOS EJECTIVOS, S.A.

By: _____

Name: Percival Brown

Title: Provisioning Mgr.

ENGINE DELIVERY RECEIPT


TO:     WORLD AIR LEASE, INC. (Lessor)

FROM:   TRANSPORTES AEREOS EJECTIVOS, S.A. (Lessee)


The undersigned hereby acknowledges that on this 1st day of ~~October~~ *November*, 1996, Lessor did

deliver, in accordance with that certain Aircraft Engine Lease Agreement dated October 24, 1996,

to Lessee that certain General Electric CF6-50C2 Engine, Manufacturer's Serial No. 455376 at

Miami, Florida. The undersigned does hereby further acknowledge that he/she has received and does

hereby accepts delivery of the aforesaid Engine.

Signed this 1st day of ~~October~~ *November*, 1996, at Miami, Florida.


TRANSPORTES AEREOS EJECTIVOS, S.A.


By: _____
        (Signature)

Name: JOSE LUIS SANCHEZ P.
        (Printed or Typed)

Title: MAINTENANCE REPRESENTATIVE

04/09/1997  16:23     305871    6

## GREENWICH AIR SERVICES, MIAMI OPERATIONS

# COST ESTIMATE FORM

**Customer:** World Air Lease
**Attention:** S. Murphy
**Date:** April 9, 1997

*Purchase Order:* 3030
*Control Order:* 111113
*Model:* CF6-50C2
*Serial Number:* 455376

| | |
|---|---|
| *Labor:* | $196,323 |
| *Material:* | $201,507 |
| *Life Limited Parts (LLP):* | $0 |
| *Outside Services (OSS):* | $227,853 |
| *Anticipated Additional Scrap (Material):* | $0 |
| *Anticipated Additional Scrap (Blades/Vanes):* | $0 |
| *Anticipated Vendor Rejects/Unexpected Repairs:* | $0 |
| *Test (includes Fuel/Oil):* | $13,000 |
| *Accessories/Components:* | $0 |
| *Flat Rates:* | $27,792 |
| *LPT Module (CFM):* | $500,000 |
| *Hardware, Expendable, Repair Parts:* | $75,000 |
| *TOTAL:* | $1,241,475 |

**Remarks:**  The above budgetary estimate does not include any Life Limited Material replacement.

**Special Instructions:**

**Approved:**

**Greenwich Air Services**

Pete Larson                              Date
Director, Program Mgt.

**World Air Lease**

Approved Signature                       Date

CEF

EXHIBIT "D"

**TAESA**
AMOUNTS OUTSTANDING TO WORLD AIR LEASE
AS OF APRIL 9, 1997

|  |  |
|---|---:|
| Invoice Number 10095 - dated 12/10/96<br>-For Basic Rent | $62,000 |
| Invoice Number 10096 - dated 12/10/96<br>-For Minimum Installed Use Fee | $59,400 |
| Invoice Number 10097 - dated 1/16/97<br>-For Basic Rent | $62,000 |
| Invoice Number 10098 - dated 1/16/97<br>-For Minimum Installed Use Fee | $59,400 |
| Invoice Number 10099 - dated 2/10/97<br>-For Basic Rent | $56,000 |
| Invoice Number 10100 - dated 2/10/97<br>-For Minimum Installed Use Fee | $59,400 |
| Freight of Engine s/n 455376 from Brazil to Miami | $13,046 |
| Invoice Number 10101 - dated 3/10/97<br>-For Basic Rent | $62,000 |
| Invoice Number 10102 - dated 3/10/97<br>-For Minimum Installed Use Fee | $59,400 |
| Estimate for repair of Engine s/n 455376<br>-As prepared by Greenwich air Services, Inc. | $1,241,475 |
| Greenwich Air Services, Inc. for technical representation<br>of World Air Lease during trip to Brazil to bring down Engine s/n 455376 | $13,000 |
| Invoice Number 10103 - dated 4/7/97<br>-For Basic Rent | $60,000 |
| Invoice Number 10104 - dated 4/7/97<br>-For Installed Use Fee | $59,400 |
| Estimated Total Amount Due | $1,866,521 |

prepared by MdL (123WK.TAESA)

EXHIBIT "E"



**SEGUROS**
**COMERCIAL**
**AMERICA**

Seguros Comercial
América, S.A. de C.V.

Av. Revolución No. 1508
01020 México, D.F.
Tels. 661-4684 y 727-1010

TO:  World Air Lease Inc.

## CERTIFICATE OF INSURANCE

Dear Sir,

This is to certify, in our capacity or Insurance Company to the Assured, that we have arranged coverage, as evidenced below:

**ASSURED:**   Transportes Aereos Ejecutivos S.A. DE C.V. (T.A.E.S.A.)

**POLICY PERIOD:**   12 months at 1st September 1996 at 08:00 am Local Standard Time.

**ENGINES:**   CF6-50C2/E2, Agreed Value US $ 2'300,000, Serial Number 455376

**COVERAGES:**

1)  100% Aircraft Hull All Risks Insurance covering the Engine whilst in Flight, Taxiing and on the Ground for the Agreed Value shown above.

2)  100% Aircraft Hull War and allied risks, as set down in LSW 555B Wording including Hi-Jacking, Consfoscation and Requisition including by the Goverment of registration on an Agreed Value basis for Agreed Value US$ 2,500,000.
This policy is subject to an overall aggregate limit US$ 210,000,000.

3)  100% Comprehensive Airline Liability Insurance including Aircraft Liability and Comprehensive General Liability for a Combined Single Limit Bodily Injury (including passengers) and Property Damage Liability for a limit of US$ 600,000,000. each occurrence/aircraft coverage hereunder includes War and Allied Perils.

4)  100% Hull Deductible Insurance to indemnify the Assured in respect of the aircraft as follows: US$950,000 each and every loss excess of US$50,000 each and every loss. The policy is subject to an overall aggregate limit of US $ 6,000,000.

5)  100% All Risks Insurance covering the above Engine for the agreed value shown above or any part of such Engine detached therefrom on a replacement value basis. War and Allied Perils coverage is included.

**DEDUCTIBLES**

1)  Hull All Risks- US$ 1,000, 000

2)  Spares- US$ 10,000 (excluding engine running) Hull All Risk Deductible to apply whilst engine running

3)  Passenger Baggage- US$ 1, 250

4)  Cargo -US$ 5, 000

GA-071-3

1

EXHIBIT "F"



**Seguros Comercial**
**América, S.A. de C.V.**

Av. Revolución No. 1508
01020 México, D.F.
Tels: 661-4684 y 727-1010

## Cut Through Clause

The Reinsurers hereby agree (at the request and with the consent of the reinsured) that in the event of any valid claim arising hereunder, the reinsurers shall in lieu of payment to the reinsured, its successors in interest and assigns, pay to the person(s) named as loss payee(s) under the original insurance effected by the Assured that portion of any loss for which the reinsurers would otherwise be liable to pay the Reassured (subject to proof of loss) it being understood and agreed that any such payment shall fully discharge and release reinsurers from any and all further liability in connection with such claim.

The Reinsurers reserve the right to set off against any claim payable hereunder in accordance with this clause any outstanding premiums due on the reinsurances.

Payment shall be made under this reinsurance notwithstanding (i) any bankruptcy, insolvency, liquidation or dissolution of the Reinsured, and (ii) that the Reinsured has made no payment under the original insurance policies.

It is hereby understood and agreed that in the event any claims is paid by reinsurers directly to the person named Loss Payee, Seguros Comercial América, S. A. de C. V. shall be fully discharged and released from liability for the amount of such claim paid by the Reinsurer.

It is a condition that the provisions of this clause shall not operate in contravention of the laws, statutes or decrees of the Government of the country of domicile of the reasured.

Subject to policy coverage, terms, conditions, limitations and exclusions of the relevant policies.

Reinsurers have agreed to include the following special provisions:

1.- To include the Engine ( or Part ) for the agreed value while held as a spare or whilst fitted to or forming part of an aircraft owned or operated by the assured in addition to the agreed value of the aircraft to which it is attached.

2.- In the event of the Total Loss of the Aircraft on which Reinsurers are required to pay the agreed value for the Hull and the Leased Engine or Parts Reinsurers will retain rights as salvage on the Engine or Parts removed and replaced by such Leased Engine or Part.

3.- Include 50/50 Clause.

## SPECIAL CONDITIONS

### AIRLINE FINANCE/LEASE CONTRACT ENDORSEMENT

It is noted that the Contract Party(ies) have an interest in respect of the Equipment under Contract(s). Accordingly, with respect to losses occurring during the period from the Effective Date until the expiry of the insurance or until the expiry or agreed termination of the Contract(s) or until the obligations under the Contract(s) are terminated by any action of the Insured or the Contract Party(ies), which ever shall first occur, in respect of the said Interest of the Contract Party(ies) and in consideration of the Additional Premium it is confirmed that the insurance afforded by the Policy is in full force and effect and it is further agreed that the following provisions are specifically endorsed to the policy:

2

GA-071-3



**Seguros Comercial
América, S.A. de C.V.**

Av. Revolución No. 1508
01020 México, D.F.
Tels. 661-4684 y 727-1010

## 1.- Under the Hull and Aircraft Spares Insurance

1.1- In respect of any claim on Equipment that becomes payable on the basis of a Total Loss, Settlement (net of any relevant policy deductible) shall be made to, or to the order of the Contract Party(ies). In respect of any claim, settlement (net of any relevant policy deductible) shall be made with such Party(ies) as may be necessary to repair the Equipment unless otherwise agreed after consultation between the Insurers and the Insured and, where necessary under the terms of the Contract(s), the contract Party(ies). Such payment shall only be made provided they are in compliance with all applicable laws and regulations.

1.2.- Insureres shall be entitled to the Benefit of salvage in respect of any property for which a claims settlement has been made.

## 2.- Under The Legal Liability Insurance

2.1- Subject to the provisions of this Endorsement, The Insurance shall operate in all respects as if a separate Policy had been issued, covering such party insured hereunder, but this provision shall not operate to include any claim howsoever arising in respect of loss or damage to the Equipment Insured under the hull or spares insurance of the insured. Notwithstanding the foregoing the total liability of Insurers in respect of any and all Insureds shall not exceed the limits of liability stated on the Policy.

2.2.- The Insurance provided hereunder shall be primary and without right of contribution from any other insurance which may be available to the Contract Party(ies).

2.3.- This Endorsement does not provide coverage for the Contract Party(ies) with respect to claims arising out of their legal liability as manufacturer, repairer, or servicing agent of the equipment.

## 3. Under all Insurances

3.1.- The Contract Party(ies) are included as additional insureds.

3.2.- The cover afforded to each contract party(ies) by the Policy in accordance with this Endorsement shall not be invalidated by any other act or omission ( Including misrepresentation and non-disclosure) of any other person or party which results in a breach of any term, condition or warranty of the policy, PROVIDED THAT the contract Party(ies) so protected has not caused, contributed or knowingly condoned the said act or omission.

3.3.- The provision of this Endorsement apply to the Contract Party(ies)  solely in their capacity as financier(s)/ lessor(s) in the identified Contract(s) and not in any other capacity. Knowledge that any Contract Party may have or acquire  or actions that it may take or fail to take in  that other capacity  ( pursuant to any other contract of otherwise ) shall  not be considered as invalidating the cover afforded by this Endorsement.

3.4.-The Contract Party (ies) shall have no responsibility for premium and Insurers shall waive any right or set-off or counterclaim against the Contract Party(ies) except in respect of outstanding premium in respect of the Equipment.

3



| | Seguros Comercial<br>América, S.A. de C.V. | Av. Revolución No. 1508<br>01020 México, D.F.<br>Tels. 661-4684 y 727-1010 |

3.5.- Upon payment of any loss or claim to or on behalf of any Contract Party(ies), Insurers shall to the extent and in respect of such payment be thereupon subrogated to all legal and equitable rights of the Contract Party(ies) indemnified hereby (but not against any Contract Party(ies)). The Insurers shall not exercise such rights without the consent of those indemnified, such consent not to be unreasonably withheld. At the expense of the Insurers, such Contract Party(ies) shall do all things reasonably necessary to assist the Insurers to exercise said rights.

3.6.- Except in respect of any provision for Cancellation or Automatic termination specified in the policy or any endorsement Thereof, cover provided by Endorsement may only be canceled or materially altered in a manner adverse to the Contract Party(ies) by the giving of not less than thirty (30) days notice in writing to the appointed insurer (but seven (7) days or such lesser period as may be customarily available in respect of War and Alliend Perils). Notice shall be deemed to commence from the date such notice is given by the insurers. Such notice will NOT, however, be given at normal expiry date of the policy or any endorsement.

**EXCEPT AS SPECIFICALLY VARIED OR PROVIDED BY THE TERMS OF THIS ENDORSEMENT:**

1.- THE CONTRACT PARTY(IES) ARE COVERED BY THEIR POLICY SUBJECT TO ALL TERMS, CONDITIONS, LIMITATIONS, WARRANTIES, EXCLUSIONS AND CANCELLATION PROVISIONS THEREOF.

2.- THIS POLICY SHALL NOT BE VARIED BY ANY PROVISIONS CONTAINED IN THE CONTRACT(S) WHICH PURPORT TO SERVE AS AN ENDORSEMENT OR AMENDMENT TO THE POLICY.

**SCHEDULE IDENTIFYING TERMS USED IN THIS ENDORSEMENT**

1.- Equipment:

  CF6-50C2/E2 Serial Number 455376

2.- Policy Deductible applicable to physical damage to the Equipment :
  US$ 10,000 each and every loss ( excluding engine running- which subject to normal aircraft deductible ).

3- (a) Contract Parties:

  **World Air Lease Inc.**
  and

  (b) in addition , in respect of Legal Liability Insurances:
  their Shareholders, Subsidiaries, Directors, Officers, Employees. and indemnities,.

4.- Contract:
  Engine Lease Agreement, dated

5.- Effective Date:
  The date that the Insured assumes insurance responsibility for the equipment.



**SEGUROS COMERCIAL AMERICA**

**Seguros Comercial
América, S.A. de C.V.**

Av. Revolución No. 1508
01020 México, D.F.
Tels. 661-4684 y 727-1010

6.- Additional premium:
US $ 100 the receipt of which is hereby acknowledge.

Subject to the terms, conditions, limitations, exclusions, cancellation provision of the relative policies which expire at 1st September 1997 at 08:00 am Local Standard Time.

Policy Number: **M6100082**

José Luis Camarena Oseguera
*Facultative Reinsurance Department.
Seguros Comercial América, S.A.*

*Dated : October 25th, 1996*

**CIVIL COVER SHEET** 97-1520

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

CIV-MORENO

**I (a) PLAINTIFFS**

NIGHT BOX
FILED

WORLD AIR LEASING, INC.

MAY - 9 1997

CARLOS JUENKE
CLERK USDC / SDFL / MIA

**DEFENDANTS**

TRANSPORTES AEREOS EJECUTIVOS, S.A.

MAGISTRATE JUDGE
DUBÉ

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

A Dade 197 cv 1520 FAM / Dubé

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Richard L. Richards, Esq.
Jarvis & Roffino
550 Biltmore Way, Miami, FL

ATTORNEYS (IF KNOWN)
Richard R. McCormack, Esq.
McCormack & Knoblock, P.A.
9130 S. Dadeland Blvd., Miami, FL  670-9555

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
(DADE) MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government
      Plaintiff

☐ 2 U.S. Government
      Defendant

☐ 3 Federal Question
      (U.S. Government Not a Party)

☑ 4 Diversity
      (Indicate Citizenship of
      Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN × IN ONE BOX
(For Diversity Cases Only)                FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|                                        | PTF | DEF |                                                          | PTF | DEF |
|----------------------------------------|-----|-----|----------------------------------------------------------|-----|-----|
| Citizen of This State                  | ☑1  | ☐1  | Incorporated or Principal Place of Business in This State| ☐4  | ☐4  |
| Citizen of Another State               | ☐2  | ☐2  | Incorporated and Principal Place of Business in Another State| ☐5  | ☐5  |
| Citizen or Subject of a Foreign Country| ☐3  | ☑3  | Foreign Nation                                           | ☐6  | ☐6  |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

IVa. 5 days estimated (for both sides) to try entire case.

**V. NATURE OF SUIT** (PLACE AN × IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | ☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Product Liability | ☐ 640 R.R.& Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | **B SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | B ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | **A FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| B ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | * ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | *A or B |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | *A or B | | | |

**VI. ORIGIN** (PLACE AN × IN ONE BOX ONLY)

☐ 1 Original
      Proceeding

☒ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Refiled

☐ 5 Transferred from
      another district
      (specify)

☐ 6 Multidistrict
      Litigation

Appeal to District
Judge from
Magistrate
Judgment
☐ 7

**VII. REQUESTED IN
COMPLAINT:**
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES  ☐ NO

**VIII. RELATED CASE(S)** (See instructions):
IF ANY

JUDGE _____ DOCKET NUMBER _____

DATE  5/9/97

SIGNATURE OF ATTORNEY OF RECORD  Mary McCarty

**UNITED STATES DISTRICT COURT**
S/F  I-2

FOR OFFICE USE ONLY: Receipt No. 676 514    Amount: 150.00

Date Paid: 05/12/97