NIGHT BOX FILED
APR 1 7 1998
CARLOS [illegible]
CLERK, USDC / S.D.FL. / MIA

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 97-1520-CIV-MORENO

WORLD AIR LEASING, INC.,
a Florida corporation,

    Plaintiff,

vs.

TRANSPORTES AEREOS EJECUTIVOS, S.A.,
a foreign corporation,

    Defendant/Third Party Plaintiff,

vs.

VARIG, S.A. (VIACAO AEREA RIO-GRANDENSE),
d/b/a VARIG BRAZILIAN AIRLINES, a foreign
corporation,

    Third Party Defendant.
_____/

## THIRD PARTY DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO VARIG'S MOTION TO DISMISS TAESA'S AMENDED THIRD PARTY COMPLAINT

Defendant/Third Party Plaintiff, TRANSPORTES AEREOS EJECTIVOS, S.A. ("TAESA"), by and through its undersigned attorneys, files the following Memorandum of Law in Opposition to the Motion to Dismiss TAESA's Amended Third Party Complaint filed on behalf of the Third Party Defendant, VARIG, S.A. d/b/a VARIG BRAZILIAN AIRLINES ("VARIG"):

### Background

WORLD AIR LEASING, INC. ("WORLD") sued TAESA in Miami in connection with the lease of a General Electric aircraft engine delivered in Florida, which

sustained an uncontained in-flight failure on December 13, 1996, causing damage to the engine and TAESA's aircraft.

Prior to this incident, the engine had been inspected, overhauled and repaired by VARIG. On September 6, 1996, VARIG issued FAA Form 337 "Major Repair and Alteration," (in English) representing that the repairs performed to the subject engine were made in accordance with the applicable United States Federal Aviation Regulations and the engine was "approved" for return to service. (See Exhibit "A" attached to TAESA's Amended Third Party Complaint). In addition, on October 11, 1996, VARIG issued its warranty (also in English) to Specialized Overhaul Services pertaining to the subject engine. (See Exhibit "B" attached to TAESA's Amended Third Party Complaint). VARIG permitted the warranty to be assigned to others in the event that title to the engine was transferred. (*Id.*) The Third Amended Complaint alleges that the VARIG Warranty was assigned to WORLD, and that pursuant to the lease agreement, TAESA is a third party beneficiary of the foregoing VARIG warranty and the representations contained in Form 337. (See Amended Third Party Complaint at ¶ 10-11).

The Amended Third Party Complaint further alleges that the in-flight failure occurred because the engine

> ...was defective when returned to service by VARIG, and subsequently leased and delivered by WORLD to TAESA; the subject engine was not in an overhauled condition; it was not airworthy; it was not in compliance with the requisite manufacturer's service bulletins; it was not in compliance with the requisite U.S. Federal Aviation Regulations; and/or the overhaul or repairs referenced in Exhibit "A" [FAA Form 337 issued by VARIG] were not performed in a workmanlike manner. (See Amended Third Party Complaint at ¶14).

After the in-flight failure occurred, the engine was delivered to VARIG to perform repairs under VARIG's warranties. However, "Due to WORLD being unable to

confirm that VARIG will repair the Engine under the existing warranty claim, WORLD has decided to move the Engine to Greenwich Aviation Services' facility in Miami" for teardown, inspection and repairs for the account of VARIG." (See Exhibit "G" attached to VARIG's Motion to Dismiss). The affidavit submitted by VARIG of Mr. Luis Albert D. Correa, fails to advise the Court that its representative, Mauro Smarrito Borges, traveled from Brazil and was present in Miami to observe the teardown inspection of the aircraft engine. (See the attached Exhibit "1," listing Mr. Borges as an attendee on behalf of VARIG).

VARIG does not dispute that it does business and maintains an office in Miami, Florida; that it operates regularly scheduled aircraft flights into and out of Miami, Florida; nor does it contest the *in personam* jurisdiction of this Court over it. Rather, VARIG erroneously asserts that the Amended Third Party Complaint should be dismissed against it on the following grounds: (1) that CELMA is an indispensible party to this action; (2) that the action should be maintained in Brazil on the grounds of *forum non conveniens*; and (3) that Counts I, II and III of TAESA's Amended Third Party Complaint fail to states claims against VARIG upon which relief can be granted. These issues will be discussed in the order presented by VARIG.

1.   **CELMA is Not an Indispensible Party to This Action:**

WORLD has sued TAESA under an engine lease agreement. WORLD basically contends that the engine sustained an in-flight failure, and that TAESA failed to return the engine in the same condition as when it was received by TAESA. Pursuant to FRCP 14, TAESA joined VARIG as a third party defendant to these proceedings. FRCP 14(a) provides that a third-party plaintiff, such as TAESA, "may cause a summons and

complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."

TAESA asserts in its Amended Third Party Complaint, that in the event that TAESA is found liable to WORLD under the lease agreement for damage to the engine, then VARIG is liable to TAESA because the engine was defective when returned to service by VARIG; the subject engine was not in an overhauled condition as represented by VARIG; it was not airworthy; it was not in compliance with the requisite manufacturer's services bulletins; its was not in compliance with the requisite U.S. Federal Aviation Regulations; and/or the overhaul or repairs referenced in the Form 337 issued by VARIG, were not performed in a workmanlike manner. (See Amended Third Party Complaint at ¶14) TAESA is also claiming that VARIG is liable for the damages caused to TAESA's aircraft when it was struck by parts from the uncontained in-flight failure of the engine.

Contary to VARIG's assertions, CELMA is neither a necessary nor an indispensible party to this action. There are no rights of CELMA being adjudicated in these proceedings; CELMA does not have any rights in the subject engine or aircraft; nor would any judgment rendered in these proceedings adversely affect any interest of CELMA by estoppel or otherwise.

Likewise, "complete relief" can be afforded to the parties to this litigation. "Complete relief" is a factor "concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.

1983), *cert. denied*, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983); **United States ex. rel. Morongo Band of Mission Indians v. Rose**, 34 F.3d 901, 907 (9th Cir. 1994).

If VARIG believes that CELMA is liable to it for any of the claims being asserted by TAESA against VARIG, then pursuant to FRCP 14(a), VARIG has the right to join CELMA as a fourth party defendant to these proceedings. However, according to the Declaration of Luis Alberto Dias Correa, filed by VARIG, it is claimed that VARIG never subcontracted CELMA to perform any work on the subject engine on behalf of VARIG.

To adopt VARIG's reasoning would potentially make any entity that ever worked on the engine a necessary and indispensible party. If those entities could not be joined in these proceedings then, according to VARIG, the case would have to be dismissed; presumably to seek to sue those entities in a forum where jurisdiction could be obtained over them. Of course, if all of the other entities were not amenable to jurisdiction in that particular forum, then the case would again have to be dismissed. Therefore, a Plaintiff could arguably be precluded from suing anyone in an airplane accident; especially since the manufacturers of the aircraft may be located in different jurisdictions than the component manufacturers or other overhaul repair facilities. VARIG has not cited to this Court any case which substantiates its position.

However, if the Court believes that CELMA is a necessary or indispensible party to this action, then CELMA would also be a necessary or indispensible with respect to the claims asserted by WORLD against TAESA. In that event, the Court should require WORLD to join CELMA as a party. If CELMA is determined to be an indispensible

party not amenable to the jurisdiction of this Court, then the entire action should be dismissed.

      2.    **The Action Should Not Be Dismissed on the Grounds of *Forum Non Conveniens***

WORLD, who commenced this lawsuit against TAESA, is a Florida corporation, which has its principal place of business in Miami, Florida. VARIG maintains an office in Miami and operates scheduled flights into and out of Miami. The subject engine lease agreement between TAESA and WORLD was entered into in Miami. The lease agreement specifies that Florida law is applicable to all disputes between the parties; and further requires that these disputes should be litigated in the state or federal courts located in Dade County, Florida. The engine was delivered to TAESA in Miami and, pursuant to the lease agreement, the engine was required to be re-delivered to WORLD in Miami at the conclusion of the lease. WORLD claims that because VARIG would not honor its warranty, the engine had to be returned to Greenwich Air Services, an authorized GE overhaul facility located in Miami, where it was subsequently repaired. Prior to its repair, an engine tear-down inspection was performed in Miami to determine the cause of the in-flight failure. This inspection was attended by the VARIG representative, together with various other persons. All the records pertaining to the repair of the engine, after the in-flight failure, are located in or near Miami and are in English. The persons who performed these repairs are also believed to be in or near this Court's district boundaries.

Depositions are routinely taken in foreign countries. TAESA has witnesses who reside in Mexico whose depositions will either be required to be taken in Mexico, or the witnesses will be required to appear for trial in Miami. TAESA also has employees who speak Spanish and will require the use of a translator. The fact that foreign depositions

may need to be taken should not be determinative that this action should be pursued in Brazil.

VARIG is seeking to have only the Amended Third Party Complaint dismissed on *forum non conveniens* grounds. VARIG has not cited to this Court authority for this novel proposition. To adopt VARIG's argument still requires this Court to try the action between WORLD and TAESA. Therefore, no judicial economy is saved in that regard. Then TAESA would be required to try an additional lawsuit in Brazil, presenting the same evidence that was presented in the trial in Miami with WORLD.

Contrary to VARIG's assertions, the claims being asserted against VARIG are for any damages which TAESA is required to pay WORLD because of the in-flight engine failure, together with the damages sustained by TAESA when the parts from that engine impacted and damaged TAESA's aircraft. TAESA's Amended Third Party Complaint specifically alleges that this engine failed because the engine was defective when returned to service by VARIG; the subject engine was not in an overhauled condition as represented by VARIG; it was not airworthy; it was not in compliance with the requisite manufacturer's services bulletins; its was not in compliance with the requisite U.S. Federal Aviation Regulations; and/or the overhaul or repairs referenced in the Form 337 issued by VARIG, were not performed in a workmanlike manner. (See Amended Third Party Complaint at ¶14).

Based upon the factors enunciated in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and its progeny, the foregoing demonstrates that Florida, rather than Brazil, is the more appropriate forum to resolve all of the issues in the

pending dispute between these parties. Certainly, those decisions do not authorize the piecemeal litigation which VARIG now urges upon this Court.

### 3. The Amended Third Party Complaint States Claims Upon Which Relief Can be Granted Against VARIG

TAESA asserts in its Amended Third Party Complaint, claims against VARIG for breach of express warranties (Count I); breach of implied warranties (Count II); negligence (Count III); and indemnity (Count IV). VARIG seeks to dismiss the claims being asserted against it in Counts I, II and III of the Amended Third Party Complaint.

VARIG claims that this dispute should be governed by Brazilian law. (See VARIG's Motion at page 15). Of course, the application and reliance of foreign law must be specifically plead and proved by VARIG. Yet, in the same breath, VARIG seeks dismissal of the Amended Third Party Complaint by arguing that Florida law is controlling. (See VARIG's Motion at pages 16-19). VARIG's inconsistency is confusing at best.

#### A. TAESA Has Stated a Claim for Negligence under Count III of the Amended Third Party Complaint

VARIG contends that TAESA is precluded from suing VARIG in negligence for damage to TAESA's aircraft, under the guise of the "Florida economic loss rule." That rule applies "when a product damages itself and causes economic loss, *without personal injury or damage to property other than the product itself.*" *Palau Int'l Traders, Inc. v. Narcam Aircraft, Inc.*, 653 So.2d 412 (Fla. 3d DCA 1995) (en banc) (emphasis added); *cf. Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244 (Fla. 1993).

VARIG does not assert that it performed any work on TAESA's aircraft. Rather, the work performed by VARIG was limited solely to the engine which failed in flight. After the lease was entered into between WORLD and TAESA, that engine was then installed on one of TAESA's aircraft. The inflight failure of this engine, overhauled by VARIG, caused damage to "other property," namely, TAESA's aircraft. Therefore, neither *Casa Clara*, nor its progeny, preclude TAESA from asserting a claim in tort where other property, besides the engine which VARIG overhauled, has been damaged.

The facts of *Palau Int'l Traders, Inc. v. Narcam Aircraft, Inc., supra*, relied upon by VARIG, are inapposite to the case *sub judice*. That case involved a suit against a repair facility who was hired by the seller of the aircraft "to perform the necessary repairs, maintenance, and inspections of the airplane to obtain a United States Certificate of airworthiness." 653 So.2d at 413. Six months after the buyer took delivery of the aircraft, it was discovered that the aircraft's landing gear was cracked due to extensive corrosion; and it was alleged that this condition existed when Narcam performed its inspection of the aircraft. The buyer sought to recover damages for the cost to repair the aircraft, its loss of use, and other consequential damages. No damage was alleged to have been caused to any property other than the aircraft which Narcam inspected and performed repairs.

Similarly, the facts in *Florida Building Inspection Services, Inc. v. Arnold Corp.*, 660 So.2d 730 (Fla. 3d DCA 1995) (en banc), also relied upon by VARIG, are also easily distinguishable. In that case, the lessor of a building hired Florida Building Inspection Services, Inc. ("FBIS") to perform a roof inspection of the premises. FBIS issued its report stating that various leaks were found in the roof of the premises and

recommended repairs to the roof. After receiving this report, the lessee leased the premises for six months. During that time the roof leaked and the lessee hired another company to return on a number of occasions to repair the roof. Despite knowledge of these roof leaks, the lessee exercised its option to renew the lease for a five year period. It was in the second year of the five year period that major problems occurred, which required the replacement of the roof. The lessee sued FBIS for its claimed misrepresentation and negligence in its inspection of the roof. Contrary to the instant case, that court's opinion is silent of any claim being made for damages caused to "other property." Therefore, the appellate court found that absent privity, the lessee was not entitled to recover economic damages arising from the replacement of the leaking roof.

### B. TAESA Has Stated Claims for Breach of Express and Implied Warranties

As stated above, VARIG issued Form 337 and its warranty to Specialized Overhaul Services. The VARIG warranty specifically states that "In case that title to this engine is transferred, this warranty and any other warranty offered for this engine by VARIG, may be assigned with the same terms and conditions. The Amended Third Party Complaint specifically alleges that the VARIG warranty was assigned to WORLD (See Amended Third Party Complaint at ¶¶ 6-10). The Amended Third Party Complaint specifically alleges that "Pursuant to the lease agreement entered into between TAESA and the Plaintiff, TAESA is a third party beneficiary of any warranties or representations issued in connection with the subject engine including, but not limited to, the warranties

contained in Exhibits "A" and/or "B." (See Amended Third Party Complaint at ¶ 11). [1]

### C. TAESA Has Not Waived Any Warranty Provisions

As stated above, the lease agreement entered into between WORLD and TAESA, specifically allows TAESA to enforce any warranty claims which WORLD has against any overhaul agency, such as VARIG. As stated above, VARIG's warranty, attached as Exhibit "B" to the Amended Third Party Complaint, specifically provided that "In case that title of this engine is transferred, this warranty and any other warranty offered for this engine by VARIG, may be assigned with the same terms and conditions." The Amended Third Party Complaint alleges these warranties were assigned to World and that TAESA is a third party beneficiary of these warranties. At best, VARIG's argument constitutes an affirmative defense which should be raised in its Answer.

In view of the foregoing, together with other matters appearing of record, TAESA respectfully requests this Court to enter its Order denying VARIG's Motion to Dismiss TAESA's Amended Third Party Complaint.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed/faxed this 17th day of April, 1998 to: GEORGE MENCIO, JR., ESQ., Holland & Knight LLP, Suite 3000, 701 Brickell Avenue, Miami, Florida 33131; and RICHARD L.

---

[1] The subject lease specifically provides that "[WORLD] will reasonably assist [TAESA] in processing claims and enforcing rights of [WORLD] arising under any existing manufacturer's or overhaul agency warranties for any Engine leased hereunder;..." (See Exihibit "A" attached to WORLD's Amended Complaint, at par. 12).

RICHARDS, ESQ., Jarvis & Associates, Suite 830, 550 Biltmore Way, Coral Gables, Florida 33134.

                                        McCORMACK & KNOBLOCK
                                        A Professional Association
                                        Attorneys for TAESA
                                        Suite 1628 – Two Datran Center
                                        9130 South Dadeland Boulevard
                                        Miami, Florida 33156
                                        Phone: (305) 670-9555
                                        Fax:    (305) 670-6915

                                        By: _____
                                             Richard R. McCormack
                                             Florida Bar No. 168850

# GREENWICH

### A New Generation Of Power

February 19, 1997

## Engine Disassembly findings (Feb. 17, 18, 19, 1997)

⑰

**Engine Data:** CF6-50C2          TSN = 41,908 hrs     TSLSV = 238 hrs.
              Serial Number: 455376   CSN = 9,670 cyc     CSLSV = 44 cyc.

**Cause of Shop Visit:**
Uncontained failure of LPT with liberation of engine parts that penetrated engine cowling and aircraft, TAESA DC10-30 Freighter, fuselage, over Paraguay in December, 1996.

**Location of Disassembly:**   Greenwich Air Services - Miami, Florida.

**Attendees:**   GE Aircraft Engines - George Mikulskis
               Varig -                  Mauro Smarrito Borges
               TAESA -                  Julio C. Ramirez Franco
               Greenwich Air Services - Steve Murphy, & Peter Tay

**Findings:**
LPT "CU" measurement:   Actual = 1.823 in., (Previously recorded plate data = 1.817 in.)
Oil Filter/Screen Inspection:
   MCD (Metal Chip Detector) -   Inspected to OK.
   Lube Pump screen -            Inspection OK.
   Main Oil filter -             Checked OK.
Service Return (S/R) Report -will be provided later by George Mikulskis, GE Representative.
Borescope Result of HPC and HPT was satisfactory.
   HPC: no rubbing, minimum splatter.
   TMF inspected after removal of LPT Stage 1 Nozzle.
Photographs: Pictures taken on Complete engine, LPT (case halves & Rotor), and engine
   hardwares "liberated & later retrieved from ground"
Oil Samples taken, analysis pending..

## Modular Disassembly and Findings:
Core (HPC, CRF, & HPT) modules were separated and inspected.

LPT Disassembly:
Blade: Stage 1: Physically intact, dented, heavy chips, especially at trailing edge of concave side
           Will be scrapped.
       Stage 2: Heavy damage, especially leading edges, metal splatter. Heavy rubbing of blade
           shroud seal serrations.
       Stage 3: Some damages and splatters to most blades. Heavy rubbing of blade shroud seal
           serrations.
       Stage 4: Less damages than Stage 3 blades, had metal splatter.

pmt/WALTASA1.DOC/2/19/97                                                           3196

Greenwich Air Services, Inc. P/O Box 522187  Miami, Florida 33152-2187  Toll Free: 1-800-736-0800  Tel: 305-526-7000  Fax: 305-526-7005

**EXHIBIT "1"**

**GREENWICH**

A New Generation Of Power          February 19, 1997 

LPT (continue)
- Vane:  Stage 1: Previous shop blending at trailing edges, mostly outboard side., to approximately 10 vanes. Some splatter on vanes surfaces.
  - Stage 2: All segments liberated. Only nine (9) segments out of total 16 were found on runway and grass areas at Paraguay airport. They were worn, broken, had impact damage heavy rub marks at outboard surfaces. All nozzle locks for this stage are missing, even though Mr. Mauro Borges said Mr. Piero Gargano Battello, GEAE Representative, at Varig shop in Rio de Janeiro) had seen some nozzle locks from this engine at Varig's Rio de Janeiro shop.
  - Stage 3: All vanes intact, with extensive splatter, nicks, dents, and dings. All breakaway torques were recorded.
  - Stage 4: Heavy metal splatter, with some dents and nicks. All breakaway torque of nozzle locks were measured.
- Rotor: Blade removal later.
  All disks will be check for overtemp growth and hardness.
- Cases: Missing and torn open case skin at bottom half of case where Stage 2 Vanes location. Heavy gouging and rubbing inside surfaces
- TRF: Slight metal spray, some debris.

GEAE requested Service Return LPT Case (both halves), and all available LPT nozzle locks, collect by Emery Worldwide, MSAS or FedEx to:

    Workscope S.R. GAS021797
    C/O General Electric Co,
      Product Support Distribution Center,
      1800 Donaldson Road,
      Erlanger, Kentucky 41018
      Attn: S.R.Crib
      Contact: John D'Sa, ASE    (513)243-0684

Main engine bearings: (Number 4 Ball, 4 Roller, 5 Roller, 6 Roller, & 7 Rollers): will be inspected per TNSM Shop Manual limits.

**Additional engine data requirements:**
Need last shop visit, 1996, records of LPT module from Varig and/or Celma. Requested GEAE/Roy Fantelli assistance to obtain these records.

Based on further inspections, additional findings will be conveyed to GEAE, Varig, and TAESA.